Justin Steffen
*Attorney for Plaintiffs*
Steffen Legal Services, LLC
2100 SE Lake Rd. #5
Milwaukie, OR 97222
971-570-9225
info@steffenlegal.com

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KAMERON BIONDELLO** and **DENICE SHALA JOY LUIZ**,<br><br>Plaintiffs,<br><br>v.<br><br>**LISA ARRINGTON**, in her individual capacity, **BRENDA BLACKBURN**, in her individual capacity, **NICOLE BROWN**, in her individual capacity, **MONICA FELIX**, in her individual capacity, **TONY KLEIN**, in his individual capacity, **JESUS MANUEL LEGARDA ORNELAS**, in his individual capacity, **RODGER TEAL**, in his individual capacity, and **MADELINE THOMPSON**, in her individual capacity,<br><br>Defendants. | Case No.:  3:24-CV-00808<br><br>**COMPLAINT**<br>(Retaliation (free speech), abuse of a vulnerable person)<br><br>**42 USC 1983**<br><br>**1st Amendment of the U.S. Constitution**<br><br>**ORS 124.100**<br><br>**AMOUNT PRAYED FOR: $7,950,000**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFFS, through their attorney Justin Steffen, bring this COMPLAINT against

Defendants and allege as follows:

**JURISDICTION**

1. At all times material to this complaint, Plaintiffs have been current or former inmates

   incarcerated at the Coffee Creek Correctional Facility ('CCCF'), which is part of the State of

   Oregon's Department of Corrections and is located in the Portland Division of the District of

**COMPLAINT**
Page 1 of 16

Oregon. At all times material to this complaint, Defendants were all employees/agents of the State of Oregon, working at CCCF. This court has original jurisdiction of the federal claims contained in this Complaint pursuant to 28 USC 1331 and supplemental jurisdiction of the state law claims pursuant to 28 USC 1367.

## PARTIES

2. Plaintiff Kameron Biondello (fka Kameron Baszler, hereafter, 'Ms. Biondello') has been incarcerated at CCCF since 5/10/2022. She was also previously incarcerated at CCCF in 2017.

3. Plaintiff Denice Luiz (aka Chaylia Mahan, hereafter, 'Ms. Luiz') has been incarcerated at CCCF since 1/20/2023. She was also previously incarcerated at CCCF in 2017.

4. The Defendants are as follows:

    a. Defendant Tony Klein ('Klein') is a former registered nurse who was employed by, or an agent of, the State of Oregon at CCCF in 2017. In 2023, he was convicted of inflicting cruel and unusual punishment on several female inmates at CCCF in the form of sexually assaulting them. Klein was also convicted of perjury. He is currently serving a 30-year sentence in federal prison.

    b. Defendant Lisa Arrington ('Arrington') is a corrections officer who was employed by the State of Oregon at CCCF at all times material to the allegations against her in this complaint.

    c. Defendant Brenda Blackburn ('Blackburn') is a corrections officer who was employed by the State of Oregon at CCCF at all times material to the allegations against her in this complaint.

    d. Defendant Nicole Brown ('Brown') is a corrections officer who was employed by the State of Oregon at CCCF at all times material to the allegations against her in this complaint.

**COMPLAINT**
Page 2 of 16

e. Defendant Monica Felix ('Felix') is a medical professional who was employed by, or an agent of, the State of Oregon at CCCF at all times material to the allegations against her in this complaint.

f. Defendant Jesus Manuel Legarda Ornelas ('Legarda Ornelas') is a medical professional who was employed by, or an agent of, the State of Oregon at CCCF at all times material to the allegations against him in this complaint.

g. Defendant Rodger Teal ('Teal') is a corrections officer who was employed by the State of Oregon at CCCF at all times material to the allegations against him in this complaint.

h. Defendant Madeline Thompson ('Thompson') is a corrections officer who was employed by the State of Oregon at CCCF at all times material to the allegations against her in this complaint.

**ALLEGATIONS**

5. In 2017, Defendant Klein sexually assaulted Plaintiffs. Specifically:

6. Ms. Biondello was subject to the following sexual assault and abuse by Klein:

a. On July 9, 2017, Ms. Biondello was ordered by an unknown CCCF correctional officer to go directly to CCCF medical. It was hot that day and she was wearing shorts. When she arrived at CCCF medical, the facility was empty except for Klein and CCCF licensed practical nurse Nicole Navarre. Klein ordered Ms. Biondello to follow him to an examination room. Ms. Navarre remained outside the room at the nurse's station. Klein directed Ms. Biondello to get on the examination table and said, "Oh, good, you wore shorts." Klein then told her that he was going to examine her left foot, as she was having problems with a toenail. While Ms. Biondello sat on the examination table, Klein moved in front of her. He swiftly spread her legs and pressed his body against her, kissing and groping her under her clothing, including touching her vagina and her breasts.

b. Ms. Biondello was frozen with fear, as Klein stopped briefly and left the room. He returned and stated that Ms. Navarre was leaving to go to the bathroom. Klein then proceeded to untie his scrub bottoms, pulled Ms. Biondello's shorts and underwear to the side and thrust his penis inside of her vagina. Once Ms. Navarre returned from the bathroom, Klein stopped. He told Ms. Biondello he wanted her to "finish herself off" while he watched. Ms. Biondello responded that she was scared and did not want to get into trouble. Klein stood, blocking Ms. Biondello's exit, and demanded she show him her breasts, which she did.

c. Over the next two months, Klein called Ms. Biondello to CCCF medical approximately six times. Each time Klein fondled her body, including her vagina and breasts, and kissed her. However, Klein was never presented with another opportunity to be alone with Plaintiff Biondello for an extended time. During this same time period, Klein also approached Ms. Biondello outside CCCF medical, attempting to engage her in conversation when she was working at her job in the prison's garden.

d. In or around late August 2017, Klein's medical rotation changed from CCCF minimum security inmates to those in medium security. This transfer denied Klein from further access to Ms. Biondello.

e. On November 15, 2017, Ms. Biondello sought medical treatment from CCCF nurse practitioner Marilyn Mendoza, as she had been experiencing continual vaginal bleeding for nearly fifty days. Ms. Biondello was concerned that Klein had given her a sexually transmitted disease when he sexually assaulted her. Ms. Mendoza tested Ms. Biondello for Hepatitis B and C, HIV, gonorrhea, and chlamydia.

f. On or about the end of November 2017, Ms. Biondello reported her sexual assault, groping and harassment by Klein to unknown CCCF staff. Ms. Biondello then reported to CCCF Lieutenant Tricia Roberts that she had been sexually assaulted, groped and harassed by Klein.

g. On or about December 5, 2017, unknown CCCF staff notified Captain Amanda Rasmussen that Ms. Biondello had been sexually assaulted, groped and harassed by Klein.

h. On December 8, 2017, Ms. Biondello sought medical care from a different CCCF nurse practitioner. During this visit, she explained that she had been diagnosed with bacterial vaginosis ("BV") the month prior. The CCCF nurse practitioner explained to Ms. Biondello that BV could be "obtained from partners feces" but does not cause vaginal bleeding like she was experiencing. The CCCF nurse practitioner also noted that "Pt was irritated ... expressed using this exam room was 'weird' and left." The exam room on this visit was the exam room in which Ms. Biondello had been sexually assaulted by Klein.

i. On December 19, 2017, Ms. Biondello submitted a grievance to CCCF notifying the Oregon Department of Corrections ("ODOC") of the sexual assault and harassment she endured by Klein. On December 28, 2017, Ms. Biondello submitted a second grievance notifying the ODOC of the sexual assault and harassment she endured by Klein. On December 29, 2017, Ms. Biondello submitted a third grievance notifying the ODOC of the sexual assault and harassment she endured by Klein.

j. On January 19, 2018, Ms. Biondello submitted a notice of tort claim pursuant to ORS 30.275, which was acknowledged by the Oregon Department of Administrative Services. The State of Oregon, acting by and through, ODOC, had actual notice of Ms. Biondello's tort claim as a result of the grievances she submitted commencing on December 19, 2017.

7. Plaintiff Luiz was subjected to the following sexual assault and abuse by Defendant Klein:

   a. In June of 2017, Ms. Luiz was called down to the medical clinic and specifically told to wear shorts. Ms. Luiz did not have an appointment at the clinic and did not require medical attention. When she arrived, Klein instructed her to go into an exam room and sit on the gurney. Klein followed her in and immediately grabbed her hand, placing it on his penis and said, "Doesn't this look good? I heard you were into this."

   b. Ms. Luiz informed Klein that she had just gotten to Coffee Creek and that she didn't want to do anything like this and she just wanted to leave. She got up and left and Klein told her that they would be talking about this later. Ms. Luiz reported this incident to Nurse Rick (last name unknown) in person. Rick told Ms. Luiz that he would report this to a supervisor and someone would be getting back to her.

   c. Later in the summer of 2017, during the weekend when less people are around, Ms. Luiz was again called down to the medical clinic and specifically told to wear shorts. Ms. Luiz did not have an appointment at the clinic and did not require medical attention. Klein took Luiz into the exam room, pushed her onto the gurney and ordered her to touch her genitals. Out of fear of retaliation, Ms. Luiz did as she was told while Klein touched his penis. After approximately six or seven minutes, another nurse started walking towards the exam room, which caused Klein to stop what he was doing and leave the room. Ms. Luiz went back to her cell and filed a grievance regarding this matter shortly afterward.

   d. Also in the summer of 2017, Ms. Luiz was again called to the clinic even though she did not have an appointment or require medical attention. As she was leaving her unit, the door opened to the optical exam room and Klein grabbed Ms. Luiz's

**COMPLAINT**
Page 6 of 16

      wrist and pulled her into the room, saying, "We are going to talk about this right now."

  e. Klein then shut the door, pushed Ms. Luiz forward over the exam chair, pulled down her pants, and inserted his penis into her vagina against her will stating, "What do you know about that? That felt good." Ms. Luiz was paralyzed with fear and told Klein, "Please don't do this. Please." After approximately two minutes, Klein ejaculated inside of Luis and said, "Now get out of here."

  f. Later that day, Ms. Luiz filed a grievance about this issue, but never got any response.

  g. In September of 2017, Ms. Luiz was again called down to the medical clinic even though she did not have an appointment or require medical attention. Klein was in the clinic and said he wanted to find out how Luiz was doing and if she was doing okay. Ms. Luiz said she was doing fine. Klein responded by asking Ms. Luiz if she needed anything. Ms. Luiz replied that she needed Klein to leave her alone and Klein responded by saying that is never going to happen.

  h. Klein then pulled Ms. Luiz into the medication room, turned her around, pulled her pants down and raped her again. Ms. Luiz was crying the whole time and asked why he was doing this to her. Klein responded by saying, "You know you want this."

  i. After Klein finished, he told Ms. Luiz to get out of here. She went back to her unit and tried to report it to Officer Lamb. Officer Lamb told her it would have to wait because there was no one available to take her report. Ms. Luiz also wrote letters to the Oregon State Police and the Washington County District Attorney's Office, informing them that Klein had assaulted her. At the urging of the State Police, Lieutenant King took a report and said he would send someone to talk to Luiz

further. Defendants received actual notice of the facts regarding Ms. Luiz's claims against Klein.

    j. On January 24th, 2018, Ms. Luiz's former attorney sent a tort claim notice to the Oregon Department of Administrative Services related to Klein's sexual assaults.

8. Plaintiffs, by their confinement, meet the definition of vulnerable persons under ORS 124.100(1)(e) and ORS 125.005(3).

9. Because of her allegations against Defendant Klein, Plaintiff Biondello has been subject to retaliation while incarcerated at Coffee Creek in 2023 and 2024. Specifically:

    a. In April of 2023, Ms. Biondello was selected for a Receiving and Delivery orderly position. She showed up for her first day of work and Defendant Blackburn was there with her husband, who would have been one of Ms. Biondello's supervisors. The next day, she was informed that she would not be going back and would not be working in that position.

    b. Ms. Biondello then applied for a sewing job at Oregon Correctional Enterprises but was not selected. She then applied for a job as a bench mate position at the prison's physical plant, but was again not selected.

    c. Ms. Biondello reported this to her counselor and the counselor inquired as to why Ms. Biondello was not selected for the physical plant job. The counselor was told that Ms. Biondello wasn't a good fit for the job, without receiving any specific reasons.

    d. Between April and December of 2023, Blackburn began harassing Ms. Biondello and would come over from a different unit and tell Ms. Biondello that her bunk was too messy and threatened to write Ms. Biondello up on a conduct order. Blackburn stated she could come over any time she wanted and that she would definitely be coming back. If Ms. Biondello gets a conduct order she will get

**COMPLAINT**
Page 8 of 16

moved from her current unit and it can also negatively affect her graduation from the Capitol School of Hair Design, which she is enrolled in through PCC. Blackburn harassed Ms. Biondello like this on three or four separate occasions.

e. In December of 2023, Blackburn told Ms. Biondello that she needs to understand that people won't want to work with her in small spaces because of her past history. She also told Ms. Biondello that people need to protect themselves because of the Klein thing. Blackburn's harassment of Ms. Biondello, as described above, was done in retaliation for reporting Klein's sexual abuse. Upon information and belief, Blackburn had a role in Ms. Biondello being rejected for the jobs she applied for, as described in Paragraphs 9(a) and 9(b).

f. In May of 2022, Defendant Teal informed Ms. Biondello that he believed she won eight million dollars for something that wasn't true, in reference to the allegations she made against Defendant Klein (Ms. Biondello has not won or received any money related to her sexual assault by Klein). Teal also told Ms. Biondello that she was the first of 28 people to accuse Klein. On or around 7/24/22 Teal told Ms. Biondello that Klein is going to walk and she should be ashamed.

g. In April of 2023, Teal accused Ms. Biondello of being on a phone without permission and he tried to send her to segregation. Teal was not even on the unit at that time Ms. Biondello was allegedly on the phone. Ms. Biondello protested and Seargent Lowry reviewed video footage of this incident. It was clear from the footage that the allegations made by Teal about Ms. Biondello being on the phone were untrue. Teal was retaliating against Ms. Biondello because of her allegations against Defendant Klein.

h. Defendant Thompson has also retaliated against Ms. Biondello in the following manner. Between May and September of 2022, Thompson would force Ms.

    Biondello to engage in demeaning cleaning tasks, which included cleaning baseboards with a toothbrush and sponge and cleaning bird droppings off of floors and walls with a toothbrush and hand brushes. Thompson would not allow Ms. Biondello to wash her clothes or do laundry after these instances.

    i.   Because of her sexual assault by Klein, Ms. Biondello has a kitchen restriction. She mentioned this to Thompson and Thompson informed her she was well aware of her situation involving Klein.

    j.   On or around 4/16/23, Thompson said she was viewing the Biondello 'Unusual Incident Report' on Klein and said anyone can read it. Thompson said she knew exactly what Biondello had reported against Klein. Ms. Biondello subsequently found out that Thompson had reviewed the allegations Ms. Biondello made against Klein back in 2021, when Ms. Biondello was not even incarcerated at CCCF.

    k.   In April or May of 2023, Thompson made Ms. Biondello take everything out of her cell, put it on cart and table, then scrub the entire cell with a toothbrush and sanitary wipes, which took approximately 2.5 hours. Upon information and belief, Thompson has not made any other inmate at CCCF engage in the type of cleaning tasks described above.

10. Plaintiff Biondello's accusations against Klein and her behavior described in Paragraph 9, above, and Paragraph 11(f) and 11(g), below, are protected speech. She has been treated adversely compared to other inmates at CCCF because of this speech. This adverse treatment has chilled her exercise of her First Amendment rights and this treatment does not reasonable advance any legitimate correctional goals.

11. Because of her allegations against Defendant Klein, Plaintiff Luiz has also been subject to retaliation while incarcerated at CCCF in 2023 and 2024. Specifically:

a. In 2023, Ms. Luiz became ill and tried to schedule an appointment with the medical department. On at least three separate occasions, she was scheduled to see Defendant Legarda Ornelas, but the appointments would be cancelled at the last minute. She was finally seen by Legarda Ornelas and expressed her frustration about the cancelled appointments and how she was begging to get help because of her illness. Legarda Ornelas shut the door and Ms. Luiz asked to keep it open because she had had prior bad experiences with Klein in the medical department, but Legarda Ornelas declined to open the door. Legarda Ornelas told Ms. Luiz that he understood her position and that he has heard all about it. He said that if Ms. Luiz had not reported Klein's sexual assault, the medical department would be less apprehensive when treating her. Ms. Luiz asked for third person who was a female be present, which Legarda Ornelas refused to allow. He then refused to examine Luiz, told her she just had allergies, prescribed her an allergy medication, and then told her to leave.

b. Immediately afterward, Ms. Luiz reported this incident to Defendant Felix, the Nurse Manager at CCCF. Ms. Felix grabbed Ms. Luiz by the arm and said that she needs to understand that not everyone is going to share the same opinion as you and she needs to be okay with the fact that she turned in a nurse that worked here for raping her, when in fact it was Ms. Luiz who was compromising staff. Felix also alleged that Ms. Luiz wanted to have sexual relations with Klein.

c. Several months later (in August or September of 2023), Ms. Luiz had another appointment with Legarda Ornelas, after having several other scheduled appointments cancelled. Legarda Ornelas had alcohol on his breath and asked Luiz how much money she won in her lawsuit against Tony Klein. He then stated that Ms. Luiz won over one million dollars. Ms. Luiz replied that she didn't know

what he was talking about. Legarda Ornelas then asked Ms. Luiz when she would get out of prison. Ms. Luiz stated that doesn't matter, at which point Legarda Ornelas said he is retiring soon and that Ms. Luiz is just the type of woman he is looking for: sexual and financially secure. Ms. Luiz then left and reported this behavior to Officer Davis. Officer Davis told Ms. Felix, but Ms. Felix refused to take any action towards Legarda Ornelas.

d. Ms. Luiz filed grievances related to both of the above encounters with Legarda Ornelas. She also told Captain Gonzales about Legarda Ornelas' behavior. Captain Gonzales said he would file a report and look into it.

e. On or around Feb 28th, 2024, Ms. Luiz was in the medical department speaking with a different medical provider when Defendant Felix came in, grabbed her arm and stated that, under no circumstances, will Ms. Luiz talk about her sexual assault by Tony Klein. She then stated, "Do you understand?" twice and let go of Ms. Luiz's arm. However, she then grabbed Ms. Luiz again and said that she will file a disciplinary action report against Luiz if she mentions Klein again or if she mentions any medical issues pertaining to her sexual assault by Klein.

f. On or around Nov. 17th, 2023, Defendant Arrington was speaking with Ms. Biondello and Ms. Luiz. Arrington gave them a direct order that they are not to talk about Tony Klein, and not to file any grievances about anything to do with Tony Klein, or she will destroy them. Arrington also told them to stop requesting old grievances about prior sexual assaults, because they were not there. She also said if they do, she will file a disciplinary report on them. Arrington then said that she refuses to speak to Luiz at all.

g. In January of 2024, Nicole Brown came into the salon where Ms. Biondello and Ms. Luiz were both working. Ms. Luiz asked her for copies of letters/grievances

she had previously sent. Brown stated that they would not be getting copies of any letters or grievances and told them that trouble makers get shipped out and that she wouldn't like it someplace else.

12. Plaintiff Luiz's accusations against Klein and her behavior described in Paragraph 11, above, are protected speech. She has been treated adversely compared to other inmates at CCCF because of this speech. This adverse treatment has chilled her exercise of her First Amendment rights and this treatment does not reasonable advance any legitimate correctional goals.

13. Plaintiffs have exhausted all available administrative remedies related to the claims in this complaint.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF:** (Physical abuse of a vulnerable person, ORS 124.100 – against Defendant Tony Klein)

14. Plaintiffs Biondello and Luiz have been physically abused by Defendant Klein as described in Paragraphs 6 and 7, respectively. This abuse has caused Plaintiffs non-economic damages in the amount of $1,000,000 each for pain, suffering, embarrassment, and humiliation.

15. Plaintiffs are also entitled to an additional $2,000,000 each in statutory damages, pursuant to ORS 124.100(2)(b).

**SECOND CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Arrington)

16. Defendant Arrington has retaliated against both Plaintiffs for engaging in protected speech, as described in Paragraph 11(f). This retaliation has caused Plaintiffs non-economic damages in the amount of $100,000 each for pain, suffering, embarrassment, and humiliation. Plaintiffs are also entitled to punitive damages in the amount of

$100,000 each.

**THIRD CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Brown)

17. Defendant Brown has retaliated against both Plaintiffs for engaging in protected speech, as described in Paragraph 11(g). This retaliation has caused Plaintiffs non-economic damages in the amount of $100,000 each for pain, suffering, embarrassment, and humiliation. Plaintiffs are also entitled to punitive damages in the amount of $100,000 each.

**FOURTH CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Brenda Blackburn)

18. Defendant Blackburn has retaliated against Plaintiff Biondello for engaging in protected speech, as described in Paragraphs 9(a) – 9(e). This retaliation has caused Plaintiff Biondello non-economic damages in the amount of $100,000 for pain, suffering, embarrassment, and humiliation. Plaintiff Biondello is also entitled to punitive damages in the amount of $100,000.

**FIFTH CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Rodger Teal)

19. Defendant Teal has retaliated against Plaintiff Biondello for engaging in protected speech, as described in Paragraphs 9(f) – 9(g). This retaliation has caused Plaintiff Biondello non-economic damages in the amount of $50,000 for pain, suffering, embarrassment, and humiliation. Plaintiff Biondello is also entitled to punitive damages in the amount of $50,000.

**SIXTH CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Madeline Thompson)

20. Defendant Thompson has retaliated against Plaintiff Biondello for engaging in protected speech, as described in Paragraphs 9(h) – 9(k). This retaliation has caused Plaintiff

Biondello non-economic damages in the amount of $100,000 for pain, suffering, embarrassment, and humiliation. Plaintiff Biondello is also entitled to punitive damages in the amount of $100,000.

**SEVENTH CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Felix)

21. Defendant Felix has retaliated against Plaintiff Luiz for engaging in protected speech, as described in Paragraphs 11(b) – 11(e). This retaliation has caused Plaintiff Luiz non-economic damages in the amount of $100,000 for pain, suffering, embarrassment, and humiliation. Plaintiff Luiz is also entitled to punitive damages in the amount of $100,000.

**EIGHTH CLAIM FOR RELIEF:** (Retaliation: 1st Amendment to the U.S. Constitution; 42 USC 1983 – against Defendant Legarda Ornelas)

22. Defendant Legarda Ornelas has retaliated against Plaintiff Luiz for engaging in protected speech, as described in Paragraphs 11(a) – 11(d). This retaliation has caused Plaintiff Luiz non-economic damages in the amount of $200,000 for pain, suffering, embarrassment, and humiliation. Plaintiff Luiz is also entitled to punitive damages in the amount of $200,000.

**NINTH CLAIM FOR RELIEF:** (Battery – against Defendant Felix)

23. Defendant Felix committed battery against Plaintiff Luiz, as described in Paragraph 11(e). This battery has caused Plaintiff Luiz non-economic damages in the amount of $50,000 for pain, suffering, embarrassment, and humiliation.

**PRAYER FOR RELIEF**

24. WHEREFORE, Plaintiff Biondello requests the following relief:

- A money award judgment entered against Defendants for $3,900,000, representing $1,450,000 in non-economic damages, $2,000,000 in statutory damages, and $450,000 in punitive damages, as described above.

- Plaintiff Biondello's reasonable costs and attorney's fees associated with bringing this action, pursuant to 42 USC 1988(b) and/or ORS 124.100(2)(c).

- Any and all other relief the Court deems just and reasonable under the circumstances.

25. WHEREFORE, Plaintiff Luiz requests the following relief:

- A money award judgment entered against Defendants for $4,050,000, representing $1,550,000 in non-economic damages, $2,000,000 in statutory damages, and $500,000 in punitive damages, as described above.

- Plaintiff Luiz's reasonable costs and attorney's fees associated with bringing this action, pursuant to 42 USC 1988(b) and/or ORS 124.100(2)(c).

- Any and all other relief the Court deems just and reasonable under the circumstances.

Respectfully submitted on: 5/16/2024

By: s/ Justin Steffen
Justin Steffen
*Attorney for Plaintiffs*
Steffen Legal Services, LLC
2100 SE Lake Rd. #5
Milwaukie, OR 97222
971-570-9225
info@steffenlegal.com